DAVID B. SHANIES LAW OFFICE
David B. Shanies
Joel A. Wertheimer
411 Lafayette Street, Sixth Floor
New York, New York 10003
(212) 951-1710 (Tel)
(212) 951-1350 (Fax)
david@shanieslaw.com
joel@shanieslaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM STINSON,<br><br>　　　　　　　　　Plaintiff,<br><br>— against —<br><br>UNIVERSAL PROTECTION SERVICE, LLC,<br><br>　　　　　　　　　Defendant. | JURY TRIAL DEMANDED<br><br>Index No. 18-CV-1170<br><br>**COMPLAINT** |

Plaintiff William Stinson files this Complaint against the above-captioned Defendant and alleges as follows:

## NATURE OF THE ACTION

1. Mr. Stinson brings this failure to accommodate and retaliation action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102 *et seq.*, the New York State Human Rights Law ("NYS HRL"), and the New York City Human Rights Law ("NYC HRL"), based on violations of Mr. Stinson's rights by Defendant Universal Protection Service, LLC d/b/a Allied Universal Security Services ("Allied Universal").

## JURISDICTION AND VENUE

2. This action arises under the ADA and under the laws of the State and City of New York.

3. Jurisdiction lies in this Court under its federal question and supplemental jurisdiction, 28 U.S.C. §§ 1331 and 1367, and under 42 U.S.C. § 2000e-5(f)(3).

4. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1) and (c)(2) because Defendant Allied Universal is subject to this Court's personal jurisdiction with respect to this action, including, *inter alia*, because Allied Universal maintains offices, employs numerous employees, and regularly transacts substantial business within this District.

5. The United States Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue dated November 27, 2017, which is less than 90 days from the filing of this Complaint. The "Right to Sue" letter is attached hereto as Exhibit 1.

## PARTIES

6. Plaintiff William Stinson is an individual residing in New York.

7. Defendant Universal Protection Service, LLC does business as Allied Universal Security Services and is a Delaware corporation that maintains corporate headquarters at 229 West 36th Street, New York, New York 10018 and 199 Water Street, New York, New York 10038 and maintains an office at the John F. Kennedy International Airport ("JFK"). Allied Universal was formed in or around August 2016 as the result of a merger between AlliedBarton Security Services, LLC and Universal Protection Service, LLC.

## GENERAL ALLEGATIONS

8. Mr. Stinson is a 71-year-old man who has been working as a security guard at JFK for 12 years, following a career in hospital administration.

9. Mr. Stinson is a college graduate and received his Master's Degree in Hospital Administration from the University of Pittsburgh.

10. The corporate entity that has run the security contract for the Port Authority of New York and New Jersey ("Port Authority") has changed numerous times over the years, but Mr. Stinson has continuously worked as a JFK security guard, most recently for the newly formed Allied Universal.

11. Allied Universal has been running security for the Port Authority at JFK since mid-2016.

12. Mr. Stinson has been an employee in good standing for his entire time working security JFK.  While working for Allied Universal specifically, Mr. Stinson received only positive employment reviews.

13. In or around 2014, Mr. Stinson was diagnosed with benign prostatic hyperplasia ("BPH"), also known as an enlarged prostate.

14. BPH is an extremely common condition among men over 60, occurring in over 1/3rd of the population.

15. BPH symptoms include a frequent and/or urgent need to urinate, increased frequency of urination at night (nocturia), various forms of urinary difficulty, and an inability to completely empty the bladder.

16. Mr. Stinson suffers from all of these symptoms.  These symptoms substantially limit Mr. Stinson's bladder functions and substantially limit the length of time Mr. Stinson can perform a variety of major life activities, including

17. BPH is a manageable disease with medication, but the medication prescribed for BPH causes symptoms including drowsiness, dizziness, lightheadedness, and fainting.

18. Because of his BPH and its symptomatic frequent need to urinate, in or around March 2017, Mr. Stinson requested a scheduling accommodation from his superiors at Allied Universal and also requested that he be able to take additional days for leave under the FMLA on account of his BPH.

19. Ana Tovar, the human resources director for Allied Universal, informed Mr. Stinson that he would need to have his urologist fill out a questionnaire to support Mr. Stinson's request. Mr. Stinson complied with the request and his urologist provided the necessary documentation.

20. Before he requested the accommodation, Mr. Stinson worked four eight-hour shifts per week and one twelve-hour shift per week.

21. On the eight-hour shifts, Mr. Stinson would patrol the grounds at JFK in a car, which permitted him to access a bathroom if necessary.

22. The twelve-hour shift is at a fixed post, and it frequently can be difficult to access a bathroom urgently at the fixed post. Mr. Stinson had occasionally been forced to urinate in a bottle to continue working that post, and performing the necessary duties of the fixed post was becoming unmanageable because of his BPH.

23. Mr. Stinson requested that Allied Universal accommodate his condition by changing his schedule to include only eight-hour shifts, and to replace his one weekly twelve-hour shift with an additional eight-hour shift. Such a change would have allowed Mr. Stinson to continue to work despite the symptoms of his BPH.

24. Instead of accommodating Mr. Stinson's reasonable request, Allied Universal punished Mr. Stinson for making the request by doing the exact opposite of what he requested.

25. Almost immediately after the request, Mr. Stinson was given a weekly schedule consisting of *four* twelve-hour security posts and only one eight-hour post – the mirror image of his previous work schedule.

26. Mr. Stinson asked his union representative, Izzy Melendez, to speak to Mr. Stinson's project manager, Tom Tarantola, about the scheduling retaliation Mr. Stinson faced.

27. Mr. Melendez discussed Mr. Stinson's grievances with Mr. Tarantola. In that conversation, Mr. Tarantola acknowledged that he had changed Mr. Stinson's schedule to retaliate against him for making the accommodation request.

28. Mr. Stinson has continued to work for Allied Universal despite the scheduling retaliation; however, he has found it increasingly difficult to perform certain duties of his job on account of his BPH symptoms.

29. By forcing Mr. Stinson to work longer, stationary shifts rather than accommodate his request for eight-hour, roving shifts, Allied Universal has exacerbated the symptoms of Mr. Stinson's BPH and the effects of his treatment, including by causing increased fatigue and drowsiness.

30. As a result, Mr. Stinson has improperly been forced to use dozens of days of FMLA leave when his BPH and treatment have prevented him from working under the retaliatory schedule that Allied Universal instituted.

31. As a result of Allied Universal's failure to provide a reasonable accommodation for Mr. Stinson's condition and its retaliatory scheduling change, Mr. Stinson has been caused physical pain, a worsening of his symptoms, and losses of wages and paid leave to which he is entitled.

## COUNT I

**Failure to Accommodate Under the Americans with Disabilities Act, 42 U.S.C. §§ 12102 *et seq.*, and the New York State Human Rights Law, Executive Law, Article 15**

32. The foregoing paragraphs are incorporated herein by reference.

33. Mr. Stinson made his superiors aware of his disability.

34. Mr. Stinson requested a reasonable accommodation of his disability, through a combination of utilizing FMLA leave and a schedule with eight-hour shifts, and could still have performed the essential duties of his job.

35. Allied Universal refused to accommodate his request and instead against with an adverse scheduling change.

36. Allied Universal failed to provide, or even to consider, any reasonable accommodation for Mr. Stinson's disability.

37. Allied Universal also failed to engage in an interactive process to determine the feasibility of providing a reasonable accommodation for Mr. Stinson's disability.

## COUNT II

**Failure to Accommodate Under the New York City Human Rights Law, Title 8 of the Administrative Code**

38. The foregoing paragraphs are incorporated herein by reference.

39. Mr. Stinson made his superiors aware of his disability.

40. Mr. Stinson requested a reasonable accommodation of his disability, through a combination of utilizing FMLA leave and a schedule with eight-hour shifts, and could still have performed the essential duties of his job.

41. Allied Universal refused to accommodate his request and instead against with an adverse scheduling change.

## COUNT III

### Retaliation Under the Americans with Disabilities Act, 42 U.S.C. §§ 12102 *et seq.*, and the New York State Human Rights Law, Executive Law, Article 15

42. The foregoing paragraphs are incorporated herein by reference.

43. Mr. Stinson made his superiors aware of his disability.

44. Mr. Stinson requested a reasonable request to accommodate his disability, through a combination of utilizing FMLA leave and a schedule with eight-hour shifts.

45. Instead of having his disability accommodated, he was retaliated against with an adverse scheduling change, making his job materially worse than what it had been previously.

46. Mr. Stinson would have been deterred from requesting a new schedule if he had known he would be retaliated against by Allied Universal.

## COUNT IV

### Retaliation Under the New York City Human Rights Law, Title 8 of the New York City Administrative Code

47. The foregoing paragraphs are incorporated herein by reference.

48. Mr. Stinson made his superiors aware of his disability.

49. Mr. Stinson requested a reasonable request to accommodate his disability, a schedule with eight-hour shifts.

50. Instead of providing a reasonable accommodation for Mr. Stinson's disability, Allied Universal and its agents retaliated against Mr. Stinson with an adverse scheduling change that makes his job materially worse than it had been previously.

51. Mr. Stinson would have been deterred from requesting a new schedule if he had known he would be retaliated against by Allied Universal.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

a. Injunctive and declaratory relief requiring Defendant to accommodate Mr. Stinson's scheduling request and/or provide another reasonable accommodation for Mr. Stinson's disability;

b. Compensatory damages in an amount to be determined at trial;

c. Reasonable attorneys' fees and costs under 42 U.S.C § 12205 and the NYC HRL;

d. Such other relief as the Court deems just and proper.

Dated: New York, New York
February 20, 2018

By: *David B. Shanies* (signature)
DAVID B. SHANIES LAW OFFICE
David B. Shanies
Joel A. Wertheimer
411 Lafayette Street, Sixth Floor
New York, New York 10003
(212) 951-1710 (Tel)
(212) 951-1350 (Fax)
david@shanieslaw.com
joel@shanieslaw.com

# EXHIBIT 1

EEOC Form 161-B (11/09)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC")

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

**To:** William Stinson
123-31 145th Street
Queens, NY 11436

**From:** New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | E-Mail Address: |
|---|---|---|
| 846-2018-02412 | Patrick Sanford, Federal Investigator | Patrick.Sanford@eeoc.gov |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered Charge of Discrimination ("Charge"). It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this Charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this Charge.

[X] Less than 180 days have passed since the filing of this Charge, but I have determined that it is unlikely that the EEOC will be able to complete its investigation of this Charge within 180 days from the filing of this Charge.

[X] The EEOC is terminating its investigation of this Charge.

[ ] The EEOC will continue to investigate this Charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the Charge was filed until 90 days after you receive notice that we have completed action on the Charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing its investigation of this Charge. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your Right to Sue based on the above-numbered Charge will be lost.

[ ] The EEOC is continuing its investigation of your ADEA case. However, if **60 days** have passed since the filing of this Charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the Right to Sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

**If you file suit based on this Charge, please e-mail a copy of your court complaint to this office.**

On behalf of the Commission

_Kevin J. Berry_ (signature)

Kevin J. Berry,
District Director

November 27, 2017
(Date Mailed)

Enclosures(s)

cc: **Respondent:**
Allied Universal Security Services
Attn: Ana Tovar – HR Manager
JFK International Airport
Building 14
Jamaica, NY 11430
(718) 656-8970